## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **EMMITT ROSCOE, JR.,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:17cv494 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **L. COLLINS, et al.,** | ) | |
| Defendants. | ) | |

The pro se plaintiff, Emmitt Roscoe, Jr., is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Red Onion State Prison, ("Red Onion"). This matter is before the undersigned on the plaintiff's motion for entry of preliminary injunctive relief seeking medical/dental treatment and a soft diet, preventing the defendants from taking any retaliatory action against him for filing this lawsuit and seeking a transfer to another VDOC prison. (Docket Item No. 26) ("Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held before the undersigned on March 1, 2018. The undersigned now submits the following report and recommended disposition.

### I. Facts

By Complaint filed October 27, 2017, Roscoe brought this § 1983 action against numerous VDOC correctional officers and food service, medical and dental workers at Red Onion. (Docket Item No. 1). In his Complaint, Roscoe alleged that he was attacked by another inmate on February 3, 2017, while attending a Nation of Islam religious service. Roscoe alleged that his jaw was broken in the attack and

that he was knocked out. He claimed that, after the attack, he was taken to his cell and denied medical treatment until he was later discovered unconscious lying on his cell floor. Roscoe alleged that he was taken to the Medical Department and then transported to a local hospital. He stated that, at the local hospital, a CT scan confirmed that his jaw was broken, but the hospital offered him no treatment. Roscoe stated that he was transported back to Red Onion, where he was held without medical treatment until February 6, 2017, when he was taken to see an oral surgeon, Dr. Hollifield. Dr. Hollifield performed surgery and wired his jaw shut to facilitate healing. Roscoe alleged that he was transported back to Red Onion after surgery and was supposed to be provided a liquid diet that he could drink through a straw. Instead, Roscoe stated that he was often served pureed food that he could not eat with his jaw wired shut.

Roscoe's Complaint seeks damages and injunctive relief claiming that certain correctional officers initially denied him medical treatment by returning him to his cell after the attack, that medical and dental workers were deliberately indifferent to his need for treatment after the attack and continuing, that food service workers served and continue to serve him food he cannot eat due to his injury and that certain defendants have retaliated and continue to retaliate against him for filing this lawsuit.[1] At the March 1 hearing, Roscoe stated that he was seeking preliminary injunctive relief ordering the defendants to provide him with needed medical/dental treatment, to provide him with a soft diet, to stop retaliating against him and to transfer him to another VDOC prison.

---

[1] The court recently has allowed the filing of an Amended Complaint, (Docket Item No. 59-1).

At the March hearing, Roscoe testified that his jaw bone was broken, his teeth damaged, and a nerve in his jaw was damaged in the February 3, 2017, attack. As a result, he said that his top and bottom teeth do not align properly causing him continuing pain and difficulty eating. Roscoe testified that he had filed a number of requests recently seeking dental treatment for his continuing complaints. Roscoe said these requests included Offender Request forms sent by him to Red Onion's Dental Department on January 8 and 23, 2018, and February 11 and 20, 2018, to which no one had responded. (Plaintiff's Exhibit No. 7; Docket Item No. 49-7.)

On January 8, 2018, Roscoe sent an Offender Request form to Dental seeking an appointment. He wrote on the form:

> I saw you last week[.] I gave my mouth some time[.] I'm still [experiencing] a great deal of pain when I attempt to chew things of thick consistency[.] My teeth are not connecting on one side again[.] I [am] suffering in pain and I'm not eating properly. Please see me soon to attempt to address this issue for the 3rd time now.

(Docket Item No. 49-7 at 1.)

Roscoe sent another Offender Request form to Red Onion's Medical Department on January 23, 2018. On this Request form, Roscoe wrote, in part:

> … I [recently] received your response that I am scheduled to be seen this response is dated 1-16-18 that I will be seen by dental[.] I am suffering in pain[.] I am not able to properly eat my food due to the pain in my jaw[.] What is the hold up with my medical visit to dental[?] I'm being forced to suffer in pain[.] Your response was I was scheduled for dental so when will I be seen.

(Docket Item No. 49-7 at 2.)

      Roscoe sent another Offender Request form to Dental on February 11, 2018. On this form, Roscoe wrote:

> On 1-16-18 I received a response from dental assistant R. Hubbard that I was scheduled for … dental appointment[.] I [am] suffering from extreme pain and I'm losing weight cause I can't eat most of the food I [receive] … before the trays are collect[ed.] It's unclear to me why you are refusing to see me[.] I am suffering and that clearly seem[s] to be of no concern to … you but where my health is concern[ed] it[] should be a #1 priority[.] I'm [suffering] in pain and it's starting to do something to my mental [health.] I ask you to please see me for my constant pain. I'm begging you this pain is unbearable[.] I can't sleep and it's running me so crazy. Please help.

(Docket Item No. 49-7 at 3.)

      Roscoe sent another Offender Request form to Dental on February 20, 2018, on which he wrote:

> This [is] my 3rd attempt to be seen by your medical department for my injury since 1/16/18 when I received a response that I was scheduled for … dental appointment but to no avail[.] It's odd to me that you are refusing me treatment after you are aware that I current[ly] suffer some complication[.] But before I kill my self from the mental breakdown … from being forced to suffer in pain so long I will make sure my people know the cause behind my early demise. Please see me.

(Docket Item No. 49-7 at 4.)

Roscoe testified that, at the time of the injury to his jaw, he weighed 142 pounds; he said that he then currently weighed 123 pounds. He said that he had lost almost 20 pounds because he was fed the wrong food and that he could not eat properly. Roscoe testified that his soft diet order ended on March 14, 2017. Nonetheless, Roscoe introduced an Offender Diet Order form dated September 27, 2017, which stated that he should receive a mechanical soft diet through November 1, 2017. (Plaintiff's Exhibit No. 8; Docket Item No. 49-8.) At another point in his testimony, Roscoe said that he was last provided a soft diet through November 1, 2017. Roscoe testified that he was no longer receiving a mechanical soft diet.

Roscoe testified that, on the day of the attack, he was taken from Red Onion to a local hospital. He said that the doctor who examined him at this hospital said that he could not treat Roscoe's injury. He said that the doctor advised that Roscoe see an oral surgeon as soon as possible. Roscoe said he was returned to the prison and waited three days with his injury before being seen and treated by Dr. Hollifield.

Roscoe said that he also had been seen by a specialist at the Medical College of Virginia, ("MCV"), who had stated that he might need to have his jaw rebroken to treat his condition. This specialist had recommended that the prison dentist attempt to fix Roscoe's problem, but Roscoe stated that the prison dentist simply grinds down his teeth. This, he said, had not helped his problem. He said the prison dental staff was refusing to send him back to MCV for further consultation with the specialist there.

Roscoe stated that, in retaliation for complaining about his lack of treatment in a grievance, a false charge for kicking his door was written against him on

January 7, 2018. He said this disciplinary charge was later dismissed because the charging officer admitted that he could not identify who had kicked the cell door.

Roscoe also testified that Sergeant Hall planted a knife in his cell on January 23, 2018, in retaliation for his refusing to end a hunger strike. Roscoe testified that, when he requested an informal complaint form from Hall, Hall told him, "We are sick of you filing informal complaints."

Roscoe also testified that Hall told him, "I'm going to lock you up." Roscoe said that Hall thought that Roscoe was the leader of an inmate hunger strike. He said that Hall told him that, if he did not tell the other inmates to end the hunger strike, Hall would plant a knife on Roscoe.

Roscoe stated that, when he was ordered to submit to restraints to be removed from his cell on January 23, he refused until Lieutenant Adams arrived at his cell door. He said that he told Adams that Hall had threatened to plant a knife on him. Roscoe said that he then submitted to be restrained. When he exited his cell, Adams was no longer present. Roscoe testified that officers then planted a knife on him and transferred him to segregation. He said that he was later released from segregation without any type of hearing.

Specifically, Roscoe testified that he saw Hall pull some toilet paper out of his pocket. Roscoe said that the toilet paper was wrapped around a knife. He said that he asked Hall what he was doing and told him that he saw him take the knife out of his pocket. Roscoe testified that he did not have a knife in his cell before Hall planted the knife. He also said that Hall never showed him any weapon that Hall claims to have found in his cell.

-6-

Roscoe conceded that he had no evidence that the knife was planted in his cell because of his lawsuit, but he said that he never received any charges for possessing weapons until he was transferred to Red Onion.

Roscoe admitted on cross-examination that he was found guilty of possessing a weapon on January 23, 2018. Roscoe also admitted that he was charged with and found guilty of flooding his cell and threatening an officer on January 10, 2018. Roscoe admitted that he did flood his cell, but he denied threatening any officer on this date.

Roscoe also testified that officers refused to transport him to a follow-up visit with Dr. Hollifield on June 21, 2017, because Correctional Officer Meade falsely claimed that Roscoe had threatened him. He said he was charged with a threatening bodily harm disciplinary infraction. Roscoe testified that, as he was being searched to leave his cell on this day, he followed the officer's instruction to open his mouth, and he opened his mouth as far as he could. Roscoe said that the officer told him that he did not open his mouth wide enough. He said the officer got mad and slammed his tray slot shut. Roscoe testified that he was not transported to see Dr. Hollifield until September 19, 2017. On this occasion, Dr. Hollifield recommended that Roscoe return to the specialist at MCV to be examined.

Roscoe said that he has not been returned for any follow-up examination at MCV. Roscoe said that he did not want to have his jaw broken again, but, if that was what was necessary to cure his pain, he wanted treatment. Roscoe said that he did not know what treatment was needed. "All I know is that I am suffering in pain." Roscoe described his pain level as a 7 on a 10-point scale. Roscoe said that

he had repeatedly sought treatment from nurses at Red Onion for his jaw pain, but that the nurses had told him that it was a dental problem. Roscoe said the nurses told him to file requests to be seen by the Dental Department. Roscoe said that he had received no care regarding his jaw injury and pain since December 28, 2017.

Roscoe said that he has repeatedly requested additional dental treatment, but that none had been offered to him. Roscoe said that he could not sleep due to the pain. He also said that he could not chew his food properly and that this was causing him intestinal distress.

Roscoe admitted that he started a hunger strike before he was transferred to segregation on January 23, 2018. He admitted that, while he was housed in segregation cell B-306 he refused 21 meals. Roscoe said that he met with Qualified Mental Health Professional Marsha Brookshire while he was refusing to eat. He denied that he ever told Brookshire that he was refusing to eat because he was mad at correctional officers and he was being set up on false charges.

Roscoe said that he was transferred to a cell with surveillance cameras, cell B-308, on January 26, 2018. He said that when officers came to transfer him, Sergeant Farmer said, "Oh, it's the lawsuit man." Roscoe said that he did not want to come out of his cell, but that Captain Franklin had two cans of mace and told him, "You are going in that cell one way or another." He said that Franklin threatened to spray him with mace if he did not exit his cell. Roscoe said that Franklin wrote him a charge for failing to follow his orders.

Roscoe said that he did not want to move into cell B-308 because another inmate had smeared feces on the wall and floor. He also said that the bed frame

had fecal matter smeared on it. In fact, Roscoe claimed that there was a drawing on the cell wall made in smeared fecal matter. Roscoe claimed that the cameras should have shown the fecal matter on the cell walls and that anyone who looked in the cell would have seen it.

When he was shown video images of the cell walls, Roscoe identified a black smear on one wall that he said was fecal matter and dark areas near the bottom of the bed that he said was fecal matter. Roscoe said that he was placed in this cell with nothing but the boxer shorts he was wearing. Roscoe said that he was moved back to cell B-306 on January 29, 2018, after he ate his fifth consecutive meal.

On cross-examination, Roscoe admitted that he was charged with the following disciplinary infractions since being in the Department of Corrections: threatening bodily harm in May 2012, July 2012 and December 2013, possession of contraband in April 2015, possession of a weapon in June 2015, threatening aggravated assault and possession of a weapon in August 2015, possession of contraband and inciting a riot in May 2017 and threatening bodily harm in June 2017. He also admitted that he had 20 separate felony convictions, including convictions for multiple robberies and firearms charges.

Amee Duncan, Unit Manager of Red Onion A Building, also testified at the evidentiary hearing. Duncan testified that inmates in segregation housing at Red Onion had to request informal complaint and grievance forms from supervisors, which would include Duncan, Adams and Hall. Duncan also testified that a charge of kicking his cell door was dismissed against Roscoe at his January 24, 2018, hearing. Duncan stated that Roscoe was then currently classified as a security level

"S" for segregation because of his history of disruptive behavior. Duncan said that when Roscoe was held in the B-3 pod, other offenders told her that Roscoe had incited them to start a hunger strike. Duncan said that, after these inmates were transferred to a different pod from Roscoe, they all began receiving meals.

Brookshire testified that she was called to the B3 building on January 26, 2018, when Roscoe refused to transfer to cell B-308. Brookshire said that she looked inside B-308 before Roscoe was placed in the cell, and she saw no fecal matter anywhere. Brookshire admitted, however, that she did not enter the cell and inspect the cell.

Brookshire testified that Defense Exhibit No. 1 was a January 24, 2018, Incident Report she completed after Roscoe refused his ninth consecutive meal and she placed him on the Hunger Strike Protocol. (Docket Item No. 49-11.) On this form, Brookshire indicated that Roscoe said that he was not eating until he was transferred to another institution. (Docket Item No. 49-11 at 1.) Although this form stated that Roscoe had refused his ninth consecutive meal, Brookshire said that she started monitoring the situation after he refused his fifth consecutive meal.

Brookshire testified that Defense Exhibit Nos. 2, 3 and 4 were reports made of her interactions with Roscoe on January 24 and 26, 2018. (Docket Item Nos. 49-12, -13, -14.) On the January 24, 2018, Mental Health Monitoring Report, Brookshire wrote that she saw Roscoe at his cell door at cell B-306 after he requested to speak to a mental health professional. She wrote that Roscoe "presented agitated and upset. … He stated that he was mad at some [correctional officers] and continued to say he is 'being set up.'" On January 26, 2018, Brookshire wrote that Roscoe complained that he was frustrated and felt like

"people are 'antagonzing him.'" Later that day, Brookshire noted that Roscoe had missed 14 consecutive meals and that he should be placed on Hunger Strike Protocol if he refused another meal. She noted that Roscoe was weak and confused with slurred speech and that he became agitated when she encouraged him to eat.

Brookshire testified that Roscoe made no complaints to her about being unable to eat. She stated that, if Roscoe had told her that he was unable to eat, she would have documented that statement. Brookshire said that she saw Roscoe on about 10 occasions while he was housed in the B Building at Red Onion and that Roscoe never complained of being in any physical pain to her. She also said that, if she saw a prisoner with a medical problem, she would report it. She also said that she never observed any sign that Roscoe was in physical pain. She said that Roscoe never discussed any need to see an oral surgeon with her.

Red Onion Correctional Officer Bradley Mullins also testified. Mullins stated that he gave Roscoe cleaning supplies on January 26, 2018, after he was placed in cell B-308. Mullins said that he knew that Roscoe had been placed on strip cell status, but he did not know that he was not supposed to give him cleaning supplies. Mullins said that Roscoe requested cleaning supplies so he gave him some paper towels with cleaning solution sprayed on them. Mullins said that he watched Roscoe use the paper towels to clean his cell. He said that he did not see or smell any feces in cell B-308.

Red Onion Sergeant Johnny Hall also testified. Hall stated that he searched Roscoe's cell on January 26, 2018, because Roscoe was being moved to another cell. Hall said that he found a knife wrapped in wet toilet paper laying in the floor beside the toilet of Roscoe's cell. Hall specifically denied that he planted the knife

in Roscoe's cell. Hall testified that Defense Exhibit No. 5 was a photograph of the weapon he found in Roscoe's cell that day. (Docket Item No. 49-15.) Hall described the knife as a sharpened five-inch piece of metal. He said that Defense Exhibit No. 6 was a photograph of where he found the weapon. (Docket Item No. 49-16.) Hall said that the weapon was found inside a roll of wet toilet paper on the floor. Hall also testified that Defense Exhibit Nos. 7 and 8 were photographs of "score marks" on the walls of the cell from which he removed Roscoe on January 26, 2018. He said that these marks were formed when someone rubbed a piece of metal against the metal plates to sharpen it. Hall specifically denied that he was aware of Roscoe filing a lawsuit against any VDOC employees when he searched his cell on January 26, 2018. Hall testified that Plaintiff's Exhibit No. 10 contained an inspection form for an inspection he performed on cell A-422 before Roscoe was placed in the cell on January 23, 2018. (Docket Item No. 49-10.)

Red Onion inmate Donte Jamal White testified that he was housed in cell B-126 from December 2017 to January 2018, while Roscoe was housed in cell B-117. White said that, if he stood at his cell door, he could see inside Roscoe's cell. White testified that he saw that Roscoe did not get a tray a few times during this period. He said that he knew that Roscoe was supposed to get a soft diet with no dairy products. On occasion, White testified, no such tray would be sent to the building for Roscoe.

Red Onion inmate Shawn Demers also testified. He stated that in July 2017, he was housed in cell A-406, while Roscoe was housed in cell A-404. He said that during this time period he overheard a conversation between Roscoe and Lieutenant Collins and a few other officers. Demers said that he heard something

said "along the lines of retaliation" and that the officers were "really rude" to Roscoe.

Demers said that Building A4 was segregation housing, and he said that he was in segregation housing at that time because correctional officers had planted a weapon on him after he had an argument with them. Demers said that he was charged with and convicted of a disciplinary infraction for possession of a weapon. He said that he had appealed his conviction because he did not possess the weapon as charged.

Red Onion inmate Dalton Thompson testified that he remembered a "couple of times" when Roscoe did not receive the proper tray while Roscoe was housed in cell A-404 in July or August 2017. Thompson said that he was housed in cell A-405 when Roscoe was housed in cell A-404. Thompson said that he never heard Roscoe refuse a tray. In fact, Thompson said that he had, on occasion, specifically heard Roscoe ask for a tray and officers tell him that he had refused a tray. Thompson said that there were so many incidents where Roscoe did not receive a tray that Lieutenant Collins eventually came to Roscoe's cell to discuss the matter.

Red Onion inmate R. Perry testified that he was Roscoe's cellmate from January 2017 to January 2018. Perry said that Roscoe requested an informal complaint form from Sgt. Hall, and Sgt. Hall told him to pack up his property because he was being moved to segregation. Perry said that when Roscoe asked why he was being moved Hall replied "We are going to make something up." He said that Officer Stevens came to the cell door while Roscoe was lying on his bunk and asked why Roscoe was kicking his cell door. Perry said that Roscoe told him he had not kicked his cell door.

Perry said that about a week later he was housed in the A-4 segregation pod with Roscoe when they both stopped eating their food trays. Perry said that he stopped eating because he was charged with a disciplinary charge he did not commit. Perry said that Roscoe and other inmates also stopped eating during this time also. Perry also testified that he had been refused informal complaint forms in the past.

Red Onion Inmate David Jones testified that he was housed in cell B-116, and Roscoe was housed in cell B-117 from late December 2017 to January 2018. Jones testified that he recalled that Roscoe was removed from the pod on January 17, 2018, but he did not know why. Jones said that he heard words exchanged between Roscoe and the officers who removed him from the cell that day. He said that he heard the officers ask Roscoe if he had been kicking his cell door. Jones said that he knew Roscoe had not kicked his cell door, and he told Roscoe, "don't indulge in conversation, just leave it alone." He said that he heard the officers say that they were taking Roscoe to segregation and told Roscoe to pack up his property.

Jones said that he worked as the "pod feeder" in the B-1 pod. He said that as the pod feeder, he would go to the pod vestibule at meal times and get a cart with meal trays to be distributed in the housing pod. He said that he knew that Roscoe went without a tray on several occasions. He said that Roscoe was supposed to get a tray with no dairy products, but he said that Roscoe often did not have a non-dairy tray sent to the pod. He said that, when this occurred, Roscoe would return to his cell without a tray, and someone would contact Food Service to send the proper tray over to the pod. He said that he knows that non-dairy trays were delivered to

-14-

Roscoe on occasion after Food Service was notified. He said that he never heard any mention of Roscoe requiring a soft diet.

Red Onion Inmate Henry Gorham, Jr. testified that he and Roscoe were housed in adjoining cells in Red Onion's B-3 segregation unit in January and February 2018. Gorham said that he remembers that Roscoe was transferred to cell B-306 sometime in January and that he heard staff and nurses trying to encourage Roscoe to eat. He said that he also heard Roscoe talk with the Warden, Assistant Warden and Duncan regarding his claim that Sgt. Hall had planted a knife in his cell. Gorham also testified that he heard Sgt. Hall tell Roscoe, "I got you boy. As soon as you get to C building, my boy Collins going to take care of your ass."

Gorham said that Roscoe refused his meal trays while housed in this pod because Hall had planted the knife in his cell. Gorham said that on January 25, 2018, he heard Duncan tell Roscoe, that if he would stop his hunger strike, she would see that the disciplinary charge he received for the knife being planted was dismissed. Gorham said that he also heard Roscoe tell Sgt. Farmer that cell B-308 had feces in it before Roscoe was placed in the cell. Gorham said that Sgt. Franklin told Roscoe, "You are going in [the cell] one way or another." Gorham said that Franklin said he did not care if there was feces in the cell. He said that Franklin told Roscoe that he would be sorry if Franklin had to shoot gas in his cell. He also said that he heard Roscoe complain to mental health workers that there was feces in the cell. Gorham said that he knew that Correctional Officer Mutter had given Roscoe "stuff" to clean up the feces. Gorham admitted that he could not see the feces in the cell, but he said he could smell it. He said that all the camera cells had feces in them. He said that he was housed in cell B-307 when an inmate smeared

feces in cell B-308 and that he knew that no one had gone into the cell to clean it before Roscoe was placed in the cell.

Gorham also testified that he knew that Roscoe often did not receive the proper food trays. He said that Roscoe was not supposed to eat eggs, but was often served trays with eggs. He said that, when Roscoe complained, Food Service would bring another tray about 35 to 40 minutes later. Gorham said that he remembers a specific incident when Officer Massengill brought Roscoe the wrong tray. He said that Massengill kicked the tray and said that Roscoe would eat the food that was brought to him.

L. Collins testified that he had been the C Building Unit Manager at Red Onion since August 1, 2017. Collins said that he was working as the Red Onion A Building Lieutenant on February 3, 2017, when Roscoe was injured in a fight with another inmate in the gym. Collins said that when he arrived at the scene, Roscoe was already restrained. Collins said that, if Roscoe had ever asked him for an informal complaint form, he would have made arrangements for Roscoe to receive a form. He said that he could not recall whether Roscoe had asked him for a form on February 16, 2018, but said that, if Roscoe had asked him for such a form, he would have provided him with the form.

Collins testified that Roscoe was then currently designated a security level "S" and was receiving a Common Fare diet. Collins said that Roscoe had been housed in the C Building since February 16, 2018, and had made no complaints about his meal trays or meal service. Collins said that he made rounds through the building every day and that Roscoe had never brought any such complaints to his attention. Collins said that he was not aware that Roscoe suffered from any

condition that needed any ongoing medical treatment. He said that, if he were aware that Roscoe needed medical attention, he would get him medical attention. Collins also testified that Roscoe had not complained to him about being housed in a cell without electrical outlets. Collins said that some cells do not have electrical outlets because inmates housed at the SM-0 are not allowed electronics. Collins admitted, however, that such inmates were allowed to have JP5 players, which required electrical outlets to recharge. Collins said that there was no order for Roscoe to be placed in a cell without electrical outlets and that Roscoe had never complained to him about being in such a cell.

Red Onion Dental Assistant R. Hubbard testified that she scheduled and assisted the dentist with all dental procedures. She said that she had been a dental assistant at Red Onion for seven and one-half years. Hubbard said that the prison dentist, Dr. Paul Moore,[2] examined Roscoe on February 3, 2017, and determined that Roscoe had a fractured jaw. Hubbard said that she was the person who called Dr. Hollifield's office and arranged treatment for Roscoe with Dr. Hollifield. Hubbard testified that Red Onion dental records showed that Roscoe was seen by the dental department at 11 a.m. on February 3, 2017. Hubbard also confirmed that the dental records stated that an offsite medical visit for Roscoe for routine follow-up with Dr. Hollifield was cancelled for security reasons on June 21, 2017.

Hubbard also testified that Roscoe was taken to MCV for evaluation of a complaint of paresthesia or nerve impairment in his jaw in November 2017. Hubbard stated that the note from this examination listed diagnoses of closed reduction of a jaw fracture with an altered occlusion and left side paresthesia. Hubbard said the term "altered occlusion" meant that the way Roscoe's teeth lined

---

[2] Dr. Moore is incorrectly sued as P. Moore.

up was differed after his injury. She said that the report noted that Roscoe's fracture had fully healed with no evidence of any pathology. She said that the consulting physician, an oral surgeon, did not recommend any additional surgical intervention at that time. She said the physician recommended dental management for any occlusion disharmony. Hubbard said that, if necessary, a dentist could grind down or build up a person's teeth to adjust a person's occlusion or how the person's teeth came together.

Hubbard conceded that she received and responded to a number of offender request forms from Roscoe. Hubbard stated that she received a December 3, 2017, Offender Request from Roscoe requesting to be seen by Dental, which was admitted as Plaintiff's Exhibit No. 1. (Docket Item No. 49-1). On this form Roscoe wrote:

> I need to be seen by dental[.] I am suffering from [constant] pain and in my 4 front bottom teeth hot and cold painful reactions which cause me pain in those teeth[.] My teeth don't connect which makes it hard for me to properly chew the food I am served[.] I am [having] to swallow the food partially chewed which hurts my throat.

Hubbard wrote in response on December 5, 2017: "I have scheduled you for dental."

Hubbard stated that Roscoe was seen by the dentist on December 28, 2017, because he submitted an emergency grievance seeking a dental appointment and stating that he could not eat and chew. This emergency grievance form was admitted into evidence as Plaintiff's Exhibit No. 4. (Docket Item No. 49-4.) On this form Roscoe wrote:

Upon arrival back at Red Onion State Prison [on] 11-22-17 I filed a Request [Form] to medical dental department informing them of complication I am having eating my food and ongoing pain[.] I received a Request Form back [saying] I was scheduled for [an] appointment[.] It has been over a month and I have still yet to be seen[.] My gums keep swelling up and hurting[.] I can't eat the food I'm being served and I'm suffering in pain. My normal daily activity is being compromised due to my medical issue[.]

(Docket Item No. 49-4.) In response, Hubbard checked the box which stated, "Your grievance does not meet the definition for an emergency." She also wrote "scheduled" on the Staff Response section. (Docket Item No. 49-4.)

The note of Roscoe's December 28, 2017, dental visit by Dr. Moore stated that Roscoe's occlusion was adjusted and that Roscoe's teeth met up "all the way around." (Docket Item No. 49-2 at 23.) Dr. Moore also noted that Roscoe could return for additional adjustment to his occlusion as needed in the future. (Docket Item No. 49-2 at 22.)

When Roscoe questioned Hubbard on why so many days went by before he saw a dentist, she responded that his condition was not considered an emergency because it was not life-threatening, so he was scheduled for a routine appointment. Hubbard admitted that VDOC Operating Procedure 720.6, which was admitted as Plaintiff's Exhibit No. 5, defined "Emergency Dental Treatment" to include "[t]reatment performed in a reasonable period of time to correct an acute dental condition such as pain or swelling…." (Docket Item No. 49-5 at 1.) When asked how she knew that Roscoe's condition was not an emergency when he had not been seen by Dental, Hubbard responded that nurses conducted pill pass twice a day in each prison building. She testified that the nurses could bring any

emergency dental situation, such as severe swelling or difficulty swallowing, to her attention. Hubbard admitted that Roscoe's December 3, 2017, Offender Request to Dental stated that he was having difficulty swallowing his food because he could not chew it properly. (Docket Item No. 49-1.)

Hubbard testified that Roscoe filed another Offender Request with Dental on January 8, 2018, which was admitted as Plaintiff's Exhibit No. 6. Hubbard said that she responded on January 16, 2018: "You have been scheduled for dental." (Docket Item No. 49-6.)

Hubbard further testified that, despite her informing Roscoe that he had been scheduled to see the dentist again, he had not. She testified that Dr. Moore had instructed her that Dr. Wyatt, the head dentist for the VDOC, had instructed him not to see Roscoe again because he had filed this lawsuit against Dr. Moore and Hubbard. Dr. Moore said that Dr. Wyatt had instructed him to see Roscoe only for emergencies until the litigation was resolved.

On cross-examination, Hubbard stated that, as of Roscoe's last dental visit on December 28, 2017, he suffered from no medical or dental condition that required any ongoing treatment. She testified that, after adjustment, Roscoe's teeth were meeting up consistently on both the right and left sides and that Roscoe stated that his bite felt much better.

Hubbard testified that Roscoe was given an order for a liquid diet immediately after his injury, and, later, an order for a soft diet. This order was admitted as Plaintiff's Exhibit No. 8. (Docket Item No. 49-8.) The diet order listed a renewal date of November 1, 2017.

Jonna Bledsoe, R.N., Nurse Manager at Red Onion, also testified. Bledsoe stated that, after oral surgery to repair Roscoe's broken jaw, he was returned to Red Onion and placed in the medical observation unit. Bledsoe stated that, at first, Roscoe was on a liquid diet of Boost nutritional supplement drinks. Bledsoe admitted that, at one point, the prison ran out of Boost, but she stated that, during this period of time, Roscoe received Glucerna nutritional supplement drinks. Bledsoe stated that Roscoe filed an Informal Complaint form on March 6, 2017, about not receiving Boost drinks, which was admitted as Plaintiff's Exhibit No. 9. (Docket Item No. 49-9 at 1.) Bledsoe said that she responded to Roscoe informing him that he was receiving Glucerna while the prison was out of Boost.

Bledsoe also testified that, according to Roscoe's medical records, he was seen by a nurse practitioner on three occasions between December 2017 and February 2018. She said that a nurse practitioner saw Roscoe on December 5, 2017, and January 5 and January 25, 2018. She said that the medical records from these visits did not contain any complaint by Roscoe of swelling in his mouth or difficulty swallowing. She stated that Dr. Boakye had noted complaints by Roscoe of pain in his jaw, but that was before Dr. Boakye left Red Onion some time in April or May of 2017. Bledsoe said that she was not aware of Roscoe then currently suffering from any serious medical or dental issue.

Bledsoe testified that on December 5, 2017, and January 5, 2018, Roscoe complained of a headache and constipation. She said that Roscoe was seen on January 25, 2018, for an evaluation because he was on a hunger strike and had missed eight meals.

*II. Analysis*

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). The party seeking entry bears the burden to establish that these factors support granting a preliminary injunction: (1) the movant's likelihood of succeeding on the merits of the action; (2) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *See Di Biase v. SPX Corp.,* 872 F.3d 224, 230 (4th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Based on the evidence currently before the court, I find that Roscoe has failed to establish that the entry of a preliminary injunction is appropriate except for his request for continuing dental treatment.

To state a § 1983 retaliation claim, "plaintiff [] must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Bare allegations of retaliation do not establish a claim rising to the level of a constitutional nature. *See Adams*, 40 F.3d at 74-75. To prevail on a retaliation claim, a plaintiff must present specific evidence "establish[ing] that but for the retaliatory motive the complained of incident … would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Here, I am persuaded that Roscoe has presented sufficient evidence to show a likelihood of success on only his claim that he is being denied dental treatment in retaliation for filing this lawsuit. Hubbard, the dental assistant, specifically testified that she was refusing to schedule Roscoe for any additional dental examinations or treatment because Dr. Moore had instructed her not to do so because they had been sued by Roscoe. I further find ensuring that incarcerated persons receive adequate dental treatment is in the public interest.

The issues of whether Roscoe has proven that he will suffer irreparable harm and the balance of the equities are closer issues, however. Roscoe has testified that he continues to suffer from jaw pain and difficulty chewing his food. He has testified that he has lost almost 20 pounds since the injury to his jaw. Roscoe claimed that this weight loss was due to not being provided the proper soft mechanical diet or proper dental treatment to address his problems chewing, but Roscoe also admitted that he had recently participated in a hunger strike for about a week in January, which likely caused some of this weight loss.

At his hearing, Roscoe testified that "I am suffering in pain." He rated his pain level as a 7 on a 10-point scale. He even testified that, if it was necessary to have his jaw broken again to cure his pain, he would have it done. The evidence also showed that Roscoe has repeatedly formally requested dental treatment, alleging that he continues to suffer from pain so severe that it was affecting his mental health.

Roscoe has produced VDOC Operating Procedure 720.6, which recognizes that pain provides a basis to render emergency dental treatment. Further, this court previously has recognized that pain can qualify as "irreparable harm" for purposes

of entering preliminary injunctive relief. *See Sprinkle v. Barksdale*, Civil Action No. 7:08cv00430, 2008 WL 4499887, at *1 (W.D. Va. Oct. 7, 2008). Based on this, I find that Roscoe has established that he is likely to suffer irreparable harm in the form of pain if injunctive relief is not entered.

The court also notes that, should it order the defendants Dr. Moore and Hubbard to continue providing Roscoe with dental treatment during the pendency of this litigation, neither Dr. Moore nor Hubbard would suffer any harm. In fact, Dr. Moore and Hubbard would simply be providing the dental care they were hired to provide to all Red Onion inmates.

Based on the above-stated reasons, I recommend that the court enter injunctive relief ordering that the defendants Dr. Moore and Hubbard may not refuse to provide dental treatment to Roscoe during the pendency of this lawsuit. I recommend the court deny Roscoe's request for any other preliminary injunctive relief.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Roscoe has shown a likelihood of success on the merits on his claim that he is being denied dental treatment in retaliation for filing this lawsuit;

2.    Roscoe has shown that he is likely to suffer irreparable harm if he is denied preliminary injunctive relief ordering that the defendants Dr. Moore and Hubbard provide dental care during the pendency of this lawsuit;

3.    Roscoe has shown that the equities balance in his favor;

4.    A preliminary injunction ordering that Roscoe be provided dental treatment is in the public interest; and

5.    Roscoe has shown that the entry of preliminary injunctive relief is appropriate, insofar as to prevent the defendants Dr. Moore and Hubbard from refusing to provide ongoing dental treatment to Roscoe while this lawsuit is pending.

### RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion, insofar as it requests the court to enter preliminary injunctive relief to prevent the defendants Dr. Moore and Hubbard from refusing to provide ongoing dental treatment to Roscoe while this lawsuit is pending.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: April 20, 2018.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE