## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **EMMITT ROSCOE, JR.,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:17cv494 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **L. COLLINS, et al.,** | ) | |
| Defendants. | ) | |

The pro se plaintiff, Emmitt Roscoe, Jr., is a Virginia Department of Corrections, ("VDOC"), inmate currently housed at Red Onion State Prison, ("Red Onion"). This matter is before the undersigned on the plaintiff's motions for entry of preliminary injunctive relief, seeking appropriate medical/dental treatment and preventing the defendants from taking any retaliatory action against him for filing this lawsuit by denying him access to the VDOC grievance system. (Docket Item Nos. 116, 133, 142) ("Motions"). The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

*I. Facts*

By Amended Complaint, filed March 19, 2018, Roscoe brings this § 1983 action against numerous VDOC correctional officers and food service, medical and dental workers at Red Onion. (Docket Item No. 59-1). In his Amended Complaint, Roscoe alleged that he was attacked by another inmate on February 3, 2017, while attending a Nation of Islam religious service. Roscoe alleged that his jaw was broken in the attack and that he was knocked out. He claimed that, after the attack,

he was taken to his cell and denied medical treatment until he was later discovered unconscious lying on his cell floor. Roscoe alleged that he was taken to the Medical Department and then transported to a local hospital. He stated that, at the local hospital, a CT scan confirmed that his jaw was broken, but the hospital offered him no treatment. Roscoe stated that he was transported back to Red Onion, where he was held without medical treatment until February 6, 2017, when he was taken to see an oral surgeon, Dr. Hollifield. Dr. Hollifield performed surgery and wired his jaw shut to facilitate healing. Roscoe alleged that he was transported back to Red Onion after surgery and was supposed to be provided a liquid diet that he could drink through a straw. Instead, Roscoe stated that he was often served pureed food that he could not eat with his jaw wired shut.

Roscoe's Amended Complaint seeks damages and injunctive relief, claiming that certain correctional officers failed to protect him from the attack and initially denied him medical treatment by returning him to his cell after the attack, that medical and dental workers were deliberately indifferent to his need for treatment after the attack and continuing, that food service workers served and continue to serve him food he cannot eat due to his injury and that certain defendants have retaliated and continue to retaliate against him for filing this lawsuit.

By Memorandum Opinion and Order entered June 26, 2018, the court entered preliminary injunctive relief, requiring that Red Onion dentist and defendant, Dr. P. Moore, refer Roscoe for evaluation by the oral surgeon at the Medical College of Virginia, ("MCV"), who previously had evaluated Roscoe. (Docket Item Nos. 119, 120.) By affidavit, Roscoe stated, Defendant Sergeant Farmer told him on March 15, 2018, that Farmer had been given a copy of Roscoe's Amended Complaint adding Farmer as a party to this lawsuit. (Docket

Item No. 116-1 at 2.) Roscoe stated, Farmer said that he was going to write Roscoe a false weapon charge because of the litigation. (Docket Item No. 116-1 at 2.) Roscoe said that, later that same day, Sergeant Sutherland served Roscoe with a charge of possession or use of a weapon brought by Farmer. (Docket Item No. 116-1 at 2.) Roscoe admitted that this charge was later dismissed without a hearing. (Docket Item No. 116-1 at 2.)

Roscoe stated that, as a result of complaints he had filed in an attempt to receive medical and dental care, he was placed on a 90-day grievance restriction by Red Onion Assistant Warden J. Artrip. (Docket Item No. 116-1 at 2.) He said that Defendant L. Collins informed him that he was on grievance restriction on May 29, 2018. (Docket Item No. 116-1 at 4.) Roscoe said that, on May 30, 2018, he asked Artrip why Artrip had approved placing him on grievance restriction. Roscoe said that Artrip replied, "I don't know why you are on grievance restriction I sign a lot of stuff they just put in from of me." (Docket Item No. 116-1 at 4.) He also said that, as a result of a complaint he filed on Food Service, his soft diet was canceled on April 30, 2018. (Docket Item No. 116-1 at 3.)  As a result, Roscoe said, he had lost 16 pounds since his soft diet was canceled. (Docket Item No. 116-1 at 3.)

Through his affidavits and filings, Roscoe has admitted that he was transferred from Red Onion to Sussex I State Prison and seen at MCV by an oral surgeon who prescribed physical therapy for his injury to his jaw. (Docket Item No. 133 at 3; Docket Item No. 142 at 1.) In his pleadings, Roscoe also requests injunctive relief against dental personnel at Sussex I, who are not defendants in this case. (Docket Item No. 142 at 3.)

Roscoe has provided the court with several medical records outlining his evaluation and treatment at the Virginia Commonwealth University, ("VCU"), Medical Center, including a record completed by Dr. Lauren E. Kaplan, D.D.S., regarding Roscoe's Initial Visit on November 8, 2017. (Docket Item No. 142-2 at 1-2.)  In this report, Dr. Kaplan noted that Roscoe had been referred for evaluation of right jaw pain and left paresthesia secondary to a closed reduction of a mandible fracture in February 2017. (Docket Item No. 142-2 at 1.)  The report noted that Roscoe complained of numbness on the left side of his jaw since the injury. (Docket Item No. 142-2 at 1.)  Roscoe reported that his jaw was wired shut for five weeks, and, after the wires were removed, his teeth did not come together on the right side, and his bite felt different. (Docket Item No. 142-2 at 1.) Roscoe complained of pain at the inferior border of the right mandible. (Docket Item No. 142-2 at 1.) Dr. Kaplan stated that Roscoe's examination revealed no signs of malunion or pathology. (Docket Item No. 142-2 at 2.)  It also stated that Roscoe's paresthesia may be permanent. (Docket Item No. 142-2 at 2.)   Dr. Kaplan recommended nonsurgical management of malocclusion, with no surgical intervention indicated. (Docket Item No. 142-2 at 2.)

Roscoe also provided a July 11, 2018, report by Dr. Michael Phillip McAdams, D.D.S., for a return visit to VCU Medical Center. (Docket Item No. 142-2 at 3-4.)  The report stated that Roscoe was being evaluated for complaints of continued right jaw pain and left paresthesia secondary to a closed reduction of a mandible fracture in February 2017. (Docket Item No. 142-2 at 3.)   Roscoe reported that the Red Onion dentist had attempted two occlusal adjustments that did bring his teeth closer together, but Roscoe said he started experiencing pain on his occluding right anterior teeth. (Docket Item No. 142-2 at 3.)  Roscoe reported that his pain worsened after the adjustments. (Docket Item No. 142-2 at 3.)  Roscoe

-4-

reported left paresthesia and right parasymphysis pain. (Docket Item No. 142-2 at 3.)   A review of x-rays showed that Roscoe's fractures appeared healed within normal limits with no signs of nonunion. (Docket Item No. 142-2 at 3.)   Dr. McAdams noted that he told Roscoe that surgery for a malocclusion would be a last resort. (Docket Item No. 142-2 at 3.) Dr. McAdams stated that surgery might not resolve Roscoe's pain and could result in worsened pain/paresthesia. (Docket Item No. 142-2 at 3.)   Dr. McAdams recommended a referral to physical therapy for jaw exercises to increase Roscoe's range of motion, a referral to Dr. Thoppay to be evaluated for persistent facial pain and referral for an occlusal splint to relieve anterior occlusion. (Docket Item No. 142-2 at 4.)

Roscoe also provided a report from Dr. Jaisri R. Thoppay, D.D.S., dated July 26, 2018, for an evaluation of Roscoe's complaints of continued right jaw pain and left paresthesia after a closed reduction of a mandible fracture in February 2017. (Docket Item No. 142-2 at 5-7.)   Roscoe reported that his pain was "achy" on the right side and resulted in significant sleep disturbance. (Docket Item No. 142-2 at 5.)   Roscoe also reported left-side dysesthesia and right-side hyperalgesia and trigger zones. (Docket Item No. 142-2 at 5.)   Dr. Thoppay assessed myalgia with post traumatic myospasm and dysesthesia secondary to left-side mandible fracture. (Docket Item No. 142-2 at 7.)   Dr. Thoppay prescribed a soft diet and a prescription of gabapentin. (Docket Item No. 142-2 at 7.)

## II. Analysis

"The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Furthermore, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very

far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4ᵗʰ Cir. 1991) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3ʳᵈ Cir. 1989)). The party seeking entry bears the burden to establish that these factors support granting a preliminary injunction: (1) the movant's likelihood of succeeding on the merits of the action; (2) the likelihood of irreparable harm to the movant if preliminary injunctive relief is denied; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *See Di Biase v. SPX Corp.,* 872 F.3d 224, 230 (4ᵗʰ Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Based on the evidence currently before the court, I find that Roscoe has failed to establish that the entry of a preliminary injunction is appropriate at this time.

Under the Eighth Amendment, punishments that "involve the unnecessary and wanton infliction of pain" are prohibited. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Eighth Amendment protects inmates from inhumane treatment and conditions while incarcerated. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4ᵗʰ Cir. 1996). Prisons must provide adequate medical care to inmates. *See Estelle*, 429 U.S. at 103; *Scinto v. Stansberry*, 841 F.3d 219, 236 (4ᵗʰ Cir. 2016). Prisoners' Eighth Amendment rights are violated when prison officials exhibit "deliberate indifference" to a prisoner's serious medical needs. *Pressly v. Hutto*, 816 F.2d 977, 979 (4ᵗʰ Cir. 1987). Courts have recognized that "[d]eliberate indifference is a very high standard" and demonstrating mere negligence is insufficient. *Grayson v. Peed*, 195 F.3d 692, 695 (4ᵗʰ Cir. 1999).

A prisoner's deliberate indifference to serious medical need claim has two components, an objective and a subjective element. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the prisoner must demonstrate that he has a serious medical need. *See Iko*, 535 F.3d at 241. A condition a physician diagnosed as requiring treatment, as well as a condition that a lay person could easily identify as requiring a physician's treatment, both constitute a "serious medical need." *Iko*, 535 F.3d at 241. Subjectively, the prisoner must demonstrate that the defendant acted with deliberate indifference to those needs. *See Iko*, 535 F.3d at 241. A defendant shall be held liable for violating an inmate's Eighth Amendment rights if the defendant knew of and consciously disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). A defendant may be liable for a 42 U.S.C. § 1983 violation where the plaintiff affirmatively shows that the defendant "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Specifically, a prison official exhibits deliberate indifference to a prisoner's serious medical needs if the official had actual knowledge of said needs and the associated risks, but ignored them. *See Scinto*, 841 F.3d at 225-26. To satisfy the subjective knowledge requirement, a plaintiff must prove "direct evidence of a prison official's actual knowledge" or demonstrate circumstantial evidence establishing knowledge; circumstantial evidence can be established by showing that the "official knew of a substantial risk from the very fact the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

To state a § 1983 retaliation claim, "plaintiff [] must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th

Cir. 1994). Bare allegations of retaliation do not establish a claim rising to the level of a constitutional nature. *See Adams*, 40 F.3d at 74-75. To prevail on a retaliation claim, a plaintiff must present specific evidence "establish[ing] that but for the retaliatory motive the complained of incident … would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Here, I am persuaded that Roscoe has not presented sufficient evidence to justify entry of further preliminary relief at this time.  While the court previously entered preliminary injunctive relief, it appears that the court's order has been followed, and Roscoe has received follow-up evaluations by physicians at the VCU Medical Center. The VCU Medical Center physicians who performed these evaluations, however, do not agree on the proper course of treatment. Dr. McAdams recommended a referral to physical therapy for jaw exercises to increase Roscoe's range of motion, but he also recommended that Roscoe be seen by Dr. Thoppay for further evaluation. (Docket Item No. 142-2 at 4.) Dr. Thoppay prescribed a soft diet and a prescription of gabapentin to treat Roscoe's complaints. (Docket Item No. 142-2 at 7.)  None of the VCU Medical Center physicians have reported any ongoing pathology or abnormality. Instead, they have reported that Roscoe's mandible fracture appears well-healed. In fact, Dr. Kaplan has opined that the paresthesia in Roscoe's jaw may be permanent. Based on this evidence, I cannot find that Roscoe has shown a likelihood that he will succeed on his deliberate indifference claim or that he will suffer irreparable injury if preliminary injunctive relief is denied.

I also cannot find that Roscoe has shown a likelihood that he will succeed on his retaliation claim. Through his Motions, it appears that Roscoe seeks preliminary injunctive relief from the grievance restriction imposed upon him at

Red Onion.  Nonetheless, Roscoe has not provided the court with any evidence with regard to how his ability to file grievances has been restricted.  He also has not provided the court with any evidence that the grievance restriction was unjustified or was imposed in retaliation for filing this lawsuit. Claims of retaliation by prisoners must be regarded with skepticism "lest federal courts embroil themselves in every disciplinary act that occurs in … penal institutions." *Adams*, 40 F.3d at 74.

Based on the above-stated reasons, I recommend that the court deny Roscoe's request for any preliminary injunctive relief at this time.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Roscoe has failed to show a likelihood of success on the merits on his deliberate indifference claim;
2. Roscoe has failed to show a likelihood of success on the merits of his retaliation claim;
3. Roscoe has failed to show that he is likely to suffer irreparable harm if he is denied preliminary injunctive relief; and
4. Roscoe has failed to show that he should be entitled to preliminary injunctive relief at this time.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Motions.

-9-

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED:  March 19, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE